ROGER M. and BEVERLY A. MAMAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mamay v. Commissioner
Docket No. 5757-74.
United States Tax Court
T.C. Memo 1975-332; 1975 Tax Ct. Memo LEXIS 46; 34 T.C.M. (CCH) 1439; T.C.M. (RIA) 750332; November 6, 1975, Filed Roger M. Mamay, pro se. David W. Johnson, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a $955.70 deficiency in petitioners' 1972 income tax. There remains in issue only whether any part of amounts received by petitioner Roger M. Mamay as a medical intern is excludable from gross income under section 117(a), *47 I.R.C. 1954. FINDINGS OF FACT The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference. Petitioners, husband and wife, resided at Sherborn, Massachusetts, when they filed their petition herein. From May 3, 1972 through June 30, 1973, Roger M. Mamay ("petitioner") was an intern at the Maryland General Hospital, Baltimore, Maryland, a 430-bed hospital, which provided patient care services and offered an internship program accredited by the Council on Medical Education of the American Medical Association. The contract between the hospital ("First Party") and petitioner ("Second Party"), pursuant to which petitioner was appointed an intern, provided in part as follows: 1. First Party declares that the program offered is accredited by the Council on Medical Education of the American Medical Association. 2. First Party agrees to, and by these present does, appoint Second Party as an INTERN (First Postgraduate Year) at the MARYLAND GENERAL HOSPITAL for the period beginning May Third, nineteen hundred and Seventy-Two and ending June Thirtieth, nineteen hundred and Seventy-Three. Second Party agrees to and *48 does hereby accept, said appointment by First Party for the said period of time and further agrees to devote his entire time, best talents, ability, energy and professional skill to such endeavor. Second Party agrees to serve under the direction of the medical education authority of the Hospital and to abide by Hospital policies and procedures, Hospital Rules of Conduct, and by medical staff rules and regulations insofar as they are applicable to house officers. 3. In consideration for Second Party's undivided services, First Party will pay Second Party a stipend of Ten Thousand Dollars ($10,000.00) per year (payable bi-weekly), and will furnish Second Party, free of cost to him: Meals, uniforms, laundering of uniforms and parking facilities while on duty. Life insurance (if full-time, permanent and after six (6) months service); Blue Cross/Blue Shield Family Plan Insurance; professional liability insurance coverage while practicing on the premises of Maryland General Hospital and two (2) weeks vacation with pay will also be provided. Interns provided varied and extensive services to the hospital and its patients. As a straight medical intern, petitioner was in continuous personal *49 contact with patients. He was expected to record the medical histories of, and to perform physical examinations on, those patients assigned to him. He would then follow the patient's course, keeping progress notes and writing some orders. He was also required to be available to respond to emergency and semiemergency situations. During a portion of his internship year, he manned the hospital's emergency room for his entire working shift. Dr. Mamay performed all these functions under the direct and indirect supervision of residents, staff doctors, and attending physicians. In addition to his direct patient care responsibilities, petitioner was required to attend daily conferences and bedside rounds concerning patients in the hospital, and also to attend regularly scheduled academic conferences. To carry out his duties, petitioner worked regular daily hours and was on call during certain nights and weekends. If there were no interns, such as petitioner, available, the hospital would be required to hire other qualified personnel to do the work ordinarily done by interns. Indeed, on occasions when the hospital was inadequately staffed with interns, it actually hired others to perform *50 the necessary services. In accordance with petitioner's contract with the hospital, it paid him $5,769.30 during the last eight months of 1972 which it treated in its entirety as wages subject to income tax withholding. On their 1972 income tax return petitioners sought to exclude from Dr. Mamay's compensation $2,400 as a nontaxable fellowship (at the rate of $300 per month for the eight months of his internship during 1972). The Commissioner disallowed the exclusion, stating: Amounts received by interns performing services at a medical training hospital in order to receive specialized training are not excludible from gross income. OPINION We are presented here with the familiar question whether amounts (or portions thereof) paid by a hospital to an intern or resident physician qualify for exclusion from gross income as a "fellowship grant" under section 117(a)(1), I.R.C. 1954. [1] The issue was most recently considered by this Court in a published opinion in Steven M. Weinberg, 64 T.C. - (August 4, 1975), in which the many cases in this field were reviewed. It would serve no useful purpose to reexamine the controlling principles again. Notwithstanding Dr. Mamay's earnest *51 presentation, his case does not call for a different result. The fact that the hospital was engaged in a teaching program in which he benefited significantly and that his work was closely supervised is wholly beside the point. The pivotal consideration is that the amounts paid to him by the hospital represented compensation for services rendered; they were not in any sense or in any part fellowship grants. The record herein amply supports this conclusion. Decision will be entered for the respondent. Footnotes
1. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule.--In the case of an individual, gross income does not include-- (1) any amount received-- (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, including the value of contributed services and accommodations * * * Where the taxpayer is not a candidate for a degree, the exclusion is limited by section 117(b)(2)(B)↩ "to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year * * *".